IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONNA COLLINS,

          Plaintiff,

        vs.                                   Case No. 04-1080-JTM

JO ANNE BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

          Defendant.

MEMORANDUM AND ORDER

      Plaintiff Donna Collins has applied for disability insurance and supplemental security income benefits.  Her application was denied by the ALJ on September 30, 2003, a decision affirmed by the Appeals Council on January 13, 2004.  There are three allegations of error by Collins.  First, that the ALJ erred in failing to conduct a proper credibility analysis under Social Security Ruling 96-7p.  Second, that the ALJ violated Ruling 96-8p by failing to consider the effect of Collins's alleged severe physical impairments.  Third, that the ALJ violated Ruling 82-62 by not considering specific findings regarding the demands of her former work.

      Plaintiff-claimant Collins was born February 4, 1946.  She has stated that she became disabled beginning on August 19, 1994, due to conditions including joint and muscle pain, difficulty in sleeping, fatigue, and problems with memory and concentration.  She has a high school equivalent education, and has worked as night supervisor, a HUD apartment manager, and an apartment leasing agent.

The ALJ determined that Collins suffered from scoliosis, and fibromyalgia or arthritis in her hands and knees.  She  had previously had breast cancer surgery, but she did not have an impairment or combination of impairments listed in or medically equal to a listed impairment.  He found Collins was not entirely credible.  Collins retains the ability to do light work, defined as the ability to lift or carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, and stand or walk for the same duration.  She is limited in her overhead reach, can only occasionally do fine fingering, stooping, or crouching, and she cannot do work requiring crawling, kneeling, or climbing ladders, ropes, or scaffolding.  Collins's RFC would not stop her from working at her past jobs — HUD apartment manager, or apartment leasing agent.  The ALJ concluded Collins was not disabled.  The detailed facts are set forth independently in the ALJ's opinion (Tr. 15-24), the brief of Collins (Dkt. No. 7, at 2-8), and the Commissioner's response (Dkt. No. 10, at 4-13), and incorporated herein.

The ALJ did not err in his evaluation of Collins's subjective complaints, but considered them in a manner consistent with the requirements of law.  *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (if a claimant could be reasonably expected to produce some pain, the ALJ must consider all relevant evidence).  The record before the court indicates that the ALJ's opinion was not erroneous, but rendered by extensive findings which are well-grounded in the evidence.  He noted that Collins's complaints were "partially credible" given her history, but not credible to the extent that they would preclude her from doing her earlier work.

First, the ALJ noted Collins's impairments (which included her earlier mastectomy and complaints of knee pain), but also noted (Tr. 20) the existence of inconsistent medical evidence in the record:  normal test results on breast on May 16, 1996 and May of 1997, negative x-rays on hand, wrists, and knees on March 28, 2000, and normal x-ray of knee on January 8, 2002.  Second, the ALJ noted that Collins engaged in a variety of daily activities (keeping a neat house while living alone,

performing household tasks such as dusting, doing the dishes, paying bills, shopping and driving, going to church, visiting with friends, and working at a women's shelter) inconsistent with her subjective claims of impairment. Third, the ALJ noted the absence of medical care consistent with the level of pain described (according to Collins, 9 on a scale of 1 to 10); Collins has had no regular medical appointments and takes no prescription medication. She saw no doctors at all in 1998 or 1999, and at the time of the ALJ hearing was currently seeing no physician. The factors cited by the ALJ are legitimate grounds for assessing a claimant's credibility. *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988); *Wiley v. Chater*, 967 F. Supp. 446, 451 (D. Kan. 1997); *Noble v. Callahan*, 978 F. Supp. 980, 986 (D. Kan. 1997). Collins used a cane at the time of the hearing, but the ALJ correctly noted that use of the device was entirely at Collins's own discretion; no medical authority ever recommended she needed one. The ALJ noted other evidence indicating exaggeration on the part of Collins. Specifically, although Collins stressed that she had to take naps each day, the ALJ noted that the condition was again self-imposed by Collins, was not prescribed by any medical authority, and in any event lasted for only a half hour three days out of the week.

The court finds that the ALJ adequately assessed Collins's RFC. As noted earlier, the ALJ found Collins could lift and carry 10 pounds frequently and 20 pounds occasionally, and could sit for a total of 6 hours each day during an 8-hour day, and could stand or walk to the same extent. He concluded Collins was limited in her overhead reach, and could not perform work requiring crawling, kneeling, or climbing, and should only occasionally undertake work involving fine fingering, stooping, and crouching.

The ALJ's conclusions, which reference both the conclusions of medical consultants and the "specific reasons for their opinions ... showing that they were grounded in the evidence in the case

3

record,"(Tr. 21), are not erroneous.  Collins herself presented no RFC assessment from any treating physician. The case record shows that Dr. Timmerman summarized Collins's medical history, including her prior mastectomy.  He stated that Collins had a normal stance and gait (except for a tendency to have her spine bent), that her lumbar spine showed only mild scoliosis and was otherwise negative, that her range of motion in the shoulders showed limitations for abduction, under 40 degrees on the right and 23 degrees on the left, that she had at least 43 pounds of grip strength on the right and 34 pounds on the left, she could do a half-squat, that Dr.  Villanueva did not find the trigger points associated with fibromyalgia, and that her knee x-ray was normal (Tr. 438).  Dr. Timmerman set forth his assessment of Collins's RFC based on her medical history, stating she

> should be able to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday.  She should avoid ladders, ropes and scaffolds, and only occasionally climb stairs, stoop, kneel, crouch and crawl.  Due to her mastectomy surgery, she should avoid overhead reaching. This RFC is for the current time period. There is insufficient evidence to establish functional limitations at her DLI of 12-31-00.

(Tr. 439).  The ALJ's findings as to RFC are sufficiently tied to evidence in the record, and were not rendered in error.

With respect to the alleged error in determining whether Collins was disabled in her past work (step four), the court need not address the issue, finding the allegation moot since the ALJ proceeded to decide, free from any error, that Collins (even if disabled at step four) would not be disabled at step five because she could perform other work that exists in the national economy in significant numbers, and that determination is supported by substantial evidence.  (Tr. 22-23).  Here the ALJ referenced the findings of the vocational expert Cindy Younger, including his  request for an assessment of Collins's ability to work in a variety of jobs "given her particular residual functional capacity."  (Tr. 22).  Younger was to render her testimony based on a hypothetical individual with Collins's age, education,

and employment background, in addition to her specific work restrictions. (Id.) Younger testified that other work existed, including appointment clerk (2,740 jobs in Kansas), timekeeper (2,290 jobs in Kansas), or production clerk (2,216 jobs in Kansas). (Tr. 493-94). The ALJ's step five decision was predicated on substantial evidence in the record and was not rendered in error.

IT IS ACCORDINGLY ORDERED this 23rd day of March, 2005, that the appeal of the plaintiff-claimant is denied, and the decision of the Commissioner is affirmed.


s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE